UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>AARON LUCAS ROSKIN RUDOLF,<br><br>Defendant. | Case No: 1:23-CR-00391-TNM |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, the United States Attorney for the District of Columbia and the Environmental Crimes Section of the United States Department of Justice Environment and Natural Resources Division, respectfully submits the following Sentencing Memorandum in the above-captioned matter. Pursuant to the plea agreement in this case and for the reasons set forth below, the government recommends this Court sentence the Defendant, Aaron Lucas Roskin Rudolf, to a sentence at the lower end of the applicable Sentencing Guidelines range, specifically four months' imprisonment, impose a fine of $600,000, and require the Defendant to comply with the agreed upon Special Conditions of Supervised Release/Probation. Such a sentence reflects the seriousness of the impact of the Defendant's conduct on the environment and provides appropriate deterrence.

I.  **Factual Background**

The Defendant is the sole owner, president, and chief executive officer of Rudy's Performance Parts, Inc. (Rudy's). Presentence Investigation Report (PSIR) ¶ 15. Since he founded Rudy's in 2009, the Defendant has maintained decision-making authority over the business's operations. PSIR ¶ 15. Rudy's distributes and sells aftermarket automotive and truck parts and, at times, has employed staff who service customers' trucks. PSIR ¶ 16.

1

For approximately three years, the Defendant knowingly conspired with others to use defeat devices to disable and remove emissions controls on diesel trucks and tamper with the trucks' monitoring devices. PSIR ¶¶ 20-21. This process, referred to as "deleting" a vehicle, causes an increase in emissions from diesel trucks, thereby placing the environment and human health at risk. *See* PSIR ¶¶ 18-19, 21; Information (ECF No. 1) ¶ 12. The conspiracy caused approximately 300 diesel trucks to be "deleted" and allowed the Defendant and his business to reap a pecuniary gain of at least $300,000. PSIR ¶¶ 21-22.

## II.     Charge and Plea Agreement

The government charged the Defendant in an information (ECF No. 1), filed November 9, 2023, with a single count of conspiracy to violate the Clean Air Act (CAA), 42 U.S.C. § 7413(c)(2)(C), in violation of 18 U.S.C. § 371. The Defendant subsequently pleaded guilty to the conspiracy charge, pursuant to a plea agreement (ECF No. 8).

The Defendant faces a maximum sentence of five years of imprisonment, a fine of $250,000 or twice the pecuniary gain or loss of the offense, a term of supervised release of not more than three years,[1] and discretionary restitution pursuant to 18 U.S.C. § 3663(a). *See* PSIR ¶¶ 84, 89, 91, 106.

In the plea agreement, the parties calculated the Sentencing Guidelines as shown below, with the parties anticipating that the Defendant would be eligible for a two-point decrease pursuant to U.S.S.G. § 4C1.1, assuming the section took effect.[2]

| Guidelines Section | Calculation |
|---|---|
| Base Offense Level (U.S.S.G. § 2Q1.2(a)) | 8 |
| Repetitive Emissions (U.S.S.G. § 2Q1.2(b)(1)(A) | +6 |

---

[1] The plea agreement incorrectly noted a maximum of one year of supervised release. Plea Agreement at 2; s*ee also* PSIR ¶ 4.
[2] The plea agreement was signed prior to U.S.S.G. § 4C1.1 taking effect. As a result, the plea agreement reflected a total offense level of 11 but anticipated the additional two-point decrease.

| | |
|---|---|
| Guided Departure (U.S.S.G. § 2Q1.2, App. Note 5) | -1 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -2 |
| Zero-Point Offender Adjustment (U.S.S.G. § 4C1.1) | -2 |
| **Total Offense Level** | **9** |
| **Sentencing Range** | **4-10 months** |

The applicable Sentencing Guideline, § 2Q1.2, provides for a possible guided departure of up to two levels in either direction "[d]epending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation." U.S.S.G. § 2Q1.2, App. Note 5. Here, the parties have agreed to recommend a guided downward departure of one level under Application Note 5. Aside from this departure under Application Note 5, the government agrees with the Guidelines calculation set forth in the PSIR.[3]

With respect to financial penalties, the parties agree to jointly recommend a fine of $600,000, pursuant to the Alternative Fines Act, 18 U.S.C. § 3571(d), because the Defendant and his business derived a pecuniary gain of at least $300,000 from the offense. No restitution is owed.

Additionally, the parties agree to recommend that the Court impose the "Special Conditions of Supervised Release/Probation," set forth at Attachment A to the plea agreement (ECF No. 8-1), as a special condition of supervised release or probation.

### III.   Application of Factors Under 18 U.S.C. § 3553(a)

The government's recommended sentence is within the Sentencing Guidelines range and is appropriate under the factors the Court must consider pursuant to 18 U.S.C. § 3553(a).

---

[3] As noted in the PSIR, "potential departures are not taken into consideration in the calculation of the offense level" by the Probation Office. PSIR ¶ 90.

### a. Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

The seriousness of the Defendant's conduct is shown by its scope and impact. The Defendant's criminal activity was long term—spanning approximately three years—and involved tampering with some 300 diesel trucks. *See* PSIR ¶ 21. Although there are no identified victims in this case, this was not a crime without consequence. Rather, the Defendant's conduct caused the repetitive emissions of hazardous compounds that negatively impact human health and the environment. *See* PSIR ¶¶ 18, 21, 29; Information ¶ 12.

In enacting the CAA, Congress found "that the growth in the amount and complexity of air pollution brought about by . . . the increasing use of motor vehicles [among other things], has resulted in mounting dangers to the public health and welfare . . . ." 42 U.S.C. § 7401(a)(2). Congress declared that a purpose of the CAA was "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare . . . ." 42 U.S.C. § 7401(b)(1).

Under the CAA, vehicle and engine manufacturers are required to install on-board diagnostic systems (OBDs) on motor vehicles. *See* 42 U.S.C. § 7521(m)(1); 40 C.F.R. §§ 86.010-18 and 86.1806-05; Information ¶ 7. Because an OBD is a monitoring device or method required to be installed and maintained under the CAA, it is a crime to tamper with an OBD, in violation of 42 U.S.C. § 7413(c)(2)(C).

The OBD plays a vital role in ensuring motor vehicles do not emit excess pollutants into the air. Vehicle manufacturers install emissions controls in vehicles to meet emission standards required under the CAA. PSIR ¶ 17. Emissions control systems for diesel vehicles include components such as the following: the exhaust gas recirculation unit, which controls emissions of nitrogen oxides (NOx); the diesel oxidation catalyst, which controls emissions of carbon monoxide (CO), particulate matter (PM), and non-methane hydrocarbons (NMHC); the selective catalytic

4

reduction unit, which controls NOx; and the diesel particulate filter, which traps PM. Information ¶ 8; *see also* PSIR ¶ 17. The OBD monitors the operation of the vehicle's emissions control system. PSIR ¶ 17. If emissions control components are disabled or removed, a normally functioning OBD will trigger a malfunction indicator light on the vehicle's dashboard and record a diagnostic trouble code in the vehicle's computer. PSIR ¶ 17. The OBD also may cause the vehicle to go into "limp mode," which reduces the maximum speed of the vehicle until the emissions system is repaired. Information ¶ 9; *see also* PSIR ¶ 17.

The Defendant conspired with others to disable or remove the emissions components on diesel trucks and to tamper with OBDs using aftermarket parts, known as "tuners." PSIR ¶ 20. These tuners—a type of defeat device—plug into a port in the vehicle and tamper with the OBD through the use of software. *See* PSIR ¶ 20; Information ¶ 13. Rudolf's business sold tuners to customers and installed them on customers' trucks in exchange for payment. *See* PSIR ¶ 20; Information ¶ 18.

But the Defendant's business practice came at a cost to the environment and a risk to public health. Removing emissions control components causes additional diesel exhaust emissions, including increases in NOx, CO, NMHC, and PM. *See* PSIR ¶ 21; Information ¶ 12. Air pollution from diesel pickup trucks can increase tens or even hundreds of times, depending on the pollutant, when the emissions controls are removed.[4] The U.S. Environmental Protection Agency (EPA) identified diesel exhaust as a mobile source air toxic under the CAA, 42 U.S.C. § 7521(*l*)(1), because it poses cancer and noncancer health risks. 66 Fed. Reg. 17230 (Mar. 29, 2001); *see also*

---

[4] U.S. Envtl. Prot. Agency, *Tampered Diesel Pickup Trucks: A Review of Aggregated Evidence from EPA Civil Enforcement Investigations* (2020), at 3-4 of 21, https://www.epa.gov/sites/default/files/2021-01/documents/epaaedletterreportontampereddieselpickups.pdf.

PSIR ¶ 18. For example, diesel exhaust exposure "can lead to serious health conditions like asthma and respiratory illnesses and can worsen existing heart and lung disease, especially in children and the elderly."[5]

### b. History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

The Defendant has no prior criminal history. PSIR ¶ 38-39. This fact is appropriately reflected in the Sentencing Guidelines calculations, including the Criminal History Category and the Zero-Point Offender Adjustment under U.S.S.G. § 4C1.1.

In addition to this case, the Defendant is the subject of a civil enforcement suit alleging civil violations of the CAA. PSIR ¶ 81. The suit alleges violations[6] occurring from 2014 into 2019. Complaint at 23-38, *United States v. Rudy's Performance Parts, Inc., et al.*, No. 22-CV-495 (M.D.N.C. June 29, 2022), ECF No. 1. As asserted in the filed Complaint, the Defendant and his company sold "more than 250,000 devices that defeat emissions controls on motor vehicles in violation of the CAA." *Id.* at 2.

### c. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law (18 U.S.C. § 3553(a)(2)(A))

The use of aftermarket defeat devices, such as those at the center of this conspiracy, is a substantial source of excess air pollution. The U.S. EPA has estimated that emissions controls were removed from more than 550,000 diesel pickup trucks nationally between 2009 and 2020.[7] "These

---

[5] U.S. Envtl. Prot. Agency, *Learn About Impacts of Diesel Exhaust and the Diesel Emissions Reduction Act (DERA)*, https://www.epa.gov/dera/learn-about-impacts-diesel-exhaust-and-diesel-emissions-reduction-act-dera (last visited April 2, 2024).
[6] The Complaint alleges violations of sections 203(a)(3)(A) and (B), and 203(a)(2)(A) of the CAA (*i.e.*, 42 U.S.C. § 7522(a)(3)(A) and (B), and 42 U.S.C. § 7522(a)(2)(A), respectively).
[7] U.S. Envtl. Prot. Agency, *Tampered Diesel Pickup Trucks: A Review of Aggregated Evidence from EPA Civil Enforcement Investigations* (2020), at 1 of 21, https://www.epa.gov/sites/default/files/2021-01/documents/epaaedletterreportontampereddieselpickups.pdf.

tampered trucks constitute approximately 15 percent of the national population of diesel trucks that were originally certified with emissions controls." *Id.* Consequently, "more than 570,000 tons of excess oxides of nitrogen (NOx) and 5,000 tons of particulate matter (PM) will be emitted by these tampered trucks over the lifetime of the vehicles." *Id.* Additionally, "due to their severe excess NOx emissions, these trucks have an air quality impact equivalent to adding more than 9 million additional (compliant, non-tampered) diesel pickup trucks to our roads." *Id.* As previously noted, diesel exhaust poses both cancer and noncancer health risks.

### d. The Need for the Sentence Imposed to Afford Adequate Deterrence (18 U.S.C. § 3553(a)(2)(B) and (C))

Subsections 3553(a)(2)(B) and (C) address the goals of both general deterrence and specific deterrence, "requiring disincentives to match the severity of punishment to the harmfulness of the crime." *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

The U.S. EPA "has found numerous companies and individuals that have manufactured, sold, and installed both hardware and software specifically designed to defeat required emissions controls on motor vehicles."[8] Additionally, "[m]any retailers are online operations that sell nationwide, and some portions of the aftermarket industry operate in a secretive manner such that the nature and extent of their operations are not reflected in their business records." *Id.* at 6 of 21. Given this landscape, meaningful sentences in tampering cases such as this one can provide significant deterrent value.

For individuals, like the Defendant, who seek to profit from the sale and installation of these products, it is critical that sentences sufficiently deter the subject defendant and others from

---

[8] U.S. Envtl. Prot. Agency, *Tampered Diesel Pickup Trucks: A Review of Aggregated Evidence from EPA Civil Enforcement Investigations* (2020), at 3 of 21, https://www.epa.gov/sites/default/files/2021-01/documents/epaaedletterreportontampereddieselpickups.pdf.

engaging in these crimes. Thus, the punishment imposed must be seen as more than a simply a cost of doing business.

### e. The Need to Avoid Unwarranted Sentence Disparities (18 U.S.C. § 3553(a)(6))

The sentences imposed on defendants for similar conduct have ranged from probation to 24 months' imprisonment. Below is a non-exhaustive sampling of sentences in CAA tampering cases.

Defendant Dennis Cleveland was sentenced to two years imprisonment and a $255,000 fine after pleading guilty to one count of conspiracy to violate the CAA and one count of tampering with a CAA monitoring device. Judgment in a Criminal Case, *United States v. Cleveland*, No. 6:23-CR-03024 (W.D. Mo. Sept. 20, 2023), ECF No. 42; *see also* Government's Sentencing Memorandum at 7, *Cleveland*, ECF No. 39 (noting guidelines range calculated at 41 to 51 months). Cleveland, the owner of a towing company, admitted to directing his employees to disable the emissions control components in diesel trucks owned by his company. Plea Agreement at 2, *Cleveland*, ECF No. 8.

Defendant Travis Turner, the owner of a diesel repair shop, was sentenced to six months imprisonment by agreement after pleading guilty to being an accessory to tampering with monitoring devices. Judgment in a Criminal Case, *United States v. Pure Addiction Diesel Performance, LLC, et al.*, 3:23-CR-00189 (D. Or. June 20, 2023), ECF No. 23; Plea Agreement, *Pure Addiction, et al.*, (June 20, 2023), ECF No. 18. Turner's company pleaded guilty to tampering with monitoring devices on approximately 245 vehicles from 2018 through 2020, in violation of the CAA. Plea Agreement, *Pure Addiction, et al.*, (June 20, 2023), ECF No. 17.

Defendants Eric Flaquer and Vivian Machado were sentenced for conspiring to tamper with monitoring devices on diesel vehicles, in violation of the CAA. Flaquer was sentenced to

8

three months' imprisonment followed by three years of supervised release, with a special condition of six months' home detention with electronic monitoring. Judgment in a Criminal Case, *United States v. Flaquer et al.*, 1:22-CR-20516 (S.D. Fla. May 10, 2023), ECF No. 49. Machado was sentenced to time served followed by three years of supervised release, with a special condition of ten months of home detention with electronic monitoring. Judgment in a Criminal Case, *Flaquer et al.*, (May 10, 2023), ECF No. 50. Between January 2018 and December 2020, Flaquer, Machado, and the company Quick Tricks Automotive Performance, Inc., were paid approximately $230,830 for 1,100 transactions for the sale of delete tune files that tamper with the OBDs on diesel motor vehicles. Joint Factual Statement at 5, *Flaquer et al.*, (Jan. 31, 2023), ECF No. 21. Between October 2019 and March 2021, Flaquer, Machado, and the company Kloud9Nine, LLC, were paid approximately $141,162 for an additional 657 delete tune file transactions. *Id.*

Defendant Daniel Aaron Chase was sentenced to three years of probation and a $50,000 fine for tampering with at least 144 diesel trucks, in violation of the CAA. Judgment in a Criminal Case, *United States v. Chase*, 3:23-CR-00046 (D. Ala. Dec. 4, 2023), ECF No. 35; Plea Agreement at 5, *Chase*, (May 12, 2023), ECF No. 2. Chase was the co-owner of a vehicle repair shop, and he made over $349,000 performing unlawful work on diesel trucks between 2018 and 2022. Plea Agreement at 3, 5.

Here, a sentence including a period of imprisonment at the low end of the guidelines would fall within the range of sentences imposed for similar conduct.

**IV.   Conclusion**

For the reasons set forth above, the government recommends a sentence of four months' imprisonment, consistent with the lower end of the Sentencing Guidelines range, a fine of

$600,000, and a requirement to comply with the agreed upon Special Conditions of Supervised Release/Probation.

                        Respectfully submitted,

                        MATTHEW M. GRAVES
                        United States Attorney

By:       */s/ Jennifer Leigh Blackwell*
              Jennifer Leigh Blackwell
              Assistant United States Attorney
              D.C. Bar No. 481097
              601 D Street, N.W.
              Washington, D.C. 20530
              Telephone: 202-252-7068

              TODD KIM
              Assistant Attorney General
              Environment and Natural Resources
              Division

By:       */s/ Krishna S. Dighe*
              Krishna S. Dighe
              Senior Counsel
              Environmental Crimes Section
              D.C. Bar No. 979559
              Michigan Bar No. P45376
              150 M Street, N.E.
              Washington, DC 20002
              Telephone: 202-305-1574

By:       */s/ Stephen J. Foster*
              Stephen J. Foster
              Trial Attorney
              Environmental Crimes Section
              VA Bar No. 83893
              150 M Street, N.E.
              Washington, DC 20002
              Telephone: 202-305-4682

DATED: April 5, 2024

CERTIFICATE OF SERVICE

      On this 5th day of April, 2024, a copy of the foregoing was served on counsel of record for the Defendant via the Court's Electronic Filing System.

                                                                                                    */s/ Stephen J. Foster*
                                                                           Stephen J. Foster
                                                                           Trial Attorney
                                                                           Environmental Crimes Section
                                                                           VA Bar No. 83893
                                                                           150 M Street, N.E.
                                                                           Washington, DC 20002
                                                                           Telephone: 202-305-4682